So we will begin with case numbers 24, 725, and 728, A.H. v. New York State Department of Health. Mr. Breland, whenever you're ready. Good morning, and may it please the court. My name is Andrew Breland. I represent the individual plaintiff and intervener plaintiff appellants in this case. The district court's dismissal of the individual plaintiff's claims without even an opportunity to be heard ignores decades of precedent from both this court and the Supreme Court. Worse, it provides a roadmap for the state to moot potential plaintiff's systemic claims of constitutional and statutory violations by an avoiding adjudication on the merits. The district court's order should be reversed for principally two reasons. First, the individual plaintiff's claims were not moot, and even if they were, intervention should have been granted. So can you tell me how you would articulate the way that intervention and class substitution interplay with the class action context? Because I think part of the challenge is that if you had filed a motion to substitute, we wouldn't be dealing with the intervention standards. But the procedure by way you make sure that your reps still have a live claim hasn't been as articulated in this circuit as it has been in others. Of course, Your Honor. However, this court has stated that the proper remedy for mooting a named plaintiff's claims prior to class certification is intervention. Yeah, I'm not quibbling over the process you use. What I'm trying to figure out is how we are supposed to determine that they interplay with each other so that we know, are we looking at a matter of mootness? Are we looking at an intervention issue? Because answering one will bear on what the other one is.  And we agree that the intervener's claims, to the extent they were placed prior to adjudication, that may mean that their claims are in some way mooted. I think the proper way to think about it is potentially to ignore intervention entirely. This is why, for example, the Third Circuit has said that the question of a named plaintiff's claims becoming moot doesn't matter if the claim is pleaded as a class claim. And it's all a question for the class certification stage, when you can intervene additional plaintiffs, name new named plaintiffs to be your class representatives, because there is this tension that Your Honor is recognizing. So the district court made much of the fact that the class had not been certified yet. How are we supposed to, how does that change the doctrine? It doesn't. As this court has stated several times, if a class is pleaded in the complaint, it's assumed to be a class until the court rules otherwise. Now, the state has opportunities to change that. They could move to strike the class allegations in the complaint. They could move for early summary judgment. And then it would be on the plaintiffs to decide how to best respond to that motion. But isn't it also, I mean, it's true that class certification is not required at this stage. But the fact that the motion hasn't been made and that the cases cited that say that this is the nature of the class and the inherently transitory, where that's come up has been where there has been at least a motion for class certification. And so I'm not sure what to make of the fact that we don't have that here, that there wasn't a pending motion or anything of that sort. I understand the class claims are in the complaint. So there's a putative class, I guess. But I guess that's my question, is what significance should we attach to the fact that there hasn't been a motion for class certification? Absolutely none, Your Honor. None of the cases that the state cites require that a class certification motion have been filed. If that's right, then in a class, in a complaint that's pleaded as a class action, could there ever be a mootness argument made before a class certification? You're saying no, that's a class issue. No, Your Honor, that's not the case. There are available remedies for the state to moot a class action. In particular, the state can voluntarily secede from the, or cess the illegal actions and show, as this court has said they'd have to, that it's not going to occur again. If they eliminate the policy, say it's no longer on the books, pass a statute, that moots the class. You're now talking about the exceptions to mootness, right?  OK. And I actually had a question about that. You did have a chance to respond to the defendant's pre-motion letter, right? Correct. And in that, as I understand it, you did not raise any of the exceptions to mootness. Your response was basically, we have an intervention motion coming. No, Your Honor, that's not the case. And I can find the record site for you if you'd like. But we cited the cases there that show that, or that hold that inherently transitory class is an exception to mootness. Did you make the argument, I guess, is my question. And if so, can you tell me where? It's in the letter, you're saying? Yes, Your Honor. And we were limited to three pages in that pre-motion letter. This is the sort of international codes issue that we raised in the brief. Yeah, I understand that. But the purpose of the pre-motion letter is to give the district court an idea of what's coming. And if you didn't raise any of these arguments, then how could the district court have known that there were arguments you had in your back pocket that you were going to appeal on? I think the district court was aware of that, Your Honor, because we cited the cases and made the point that an inherently transitory class is an exception to mootness. I just want to be crystal clear on this point. Did you argue that it was inherently transitory, or you cited a case that used that phrasing? Your Honor, we made the argument. This is the record at page 445. We cited to this court's decision in Elisa W. and stated that, as there, were the classes so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before a proposed representative's individual interest expires. Mootness simply doesn't apply. I want to talk about the transitory nature. I've looked at a bunch of the cases that you cited. And in some cases, you had a situation in which we had a six-month turnaround or we had a month turnaround. This is much longer. And so my question is, is there a temporal outer bound for when one can claim that it would be subject to one of the exceptions because of the transitory nature? I mean, yours is certainly longer than any of the ones that I've seen, like the 18 months. So how much should I think about that? The short answer to your question is no, there's not a temporal outer bound. Acknowledging that my time is up, I'll answer your question briefly. There isn't an outer bound. Here, the plaintiff's claims ranged anywhere. They were institutionalized for six months, up to a period of five years. The point of the inherently transitory exception, however, is not to put a bright line rule down, but instead to say whether there's any uncertainty as to whether the claims can be adjudicated. Here, there was that uncertainty. And we see that in the record by the state's intentional placement of the named plaintiffs and the intervenors after they were given their names in a period of weeks or months. So there is no bright line. And it's simply the question of uncertainty. So if the presider will, I have a couple more questions. So it would not be preclusive, or whatever we decide here, as to the next, the intervenors. So if this doesn't go your way, is the remedy, or the next action for you to file another lawsuit with those folks? I mean, I'm just trying to figure out, like, at what point is this going to end in terms of judicial economy? I mean, you would take the position, right, that whatever we decided here would not be as, would not impact your ability for the intervenors to file a lawsuit on their own accord. Is that correct? Not necessarily, Your Honor. OK, so tell me. So let's separate the two issues. If this court decides that the named plaintiff's claims asserted as class claims are moot, that, at this point, affects the intervenors. Because the intervenors have themselves been placed into community residences. However, and as this court has held, the question is whether you have standing at the time that the complaint is filed. So we could file a new complaint on behalf of new plaintiffs who are not yet named, but the intervenors themselves could not be the plaintiffs in that case. But we don't think we need to get there. And to Your Honor's point on judicial economy, it's actually more efficient to let this case continue. And this is why the state's mootness argument doesn't quite make sense. We've done substantial discovery in this case. Depositions are next on the list. And a class certification motion is thereafter. We just need to make the record that the Supreme Court has required in Walmart and other cases to get to that motion. And if I may ask one last question. The district court focused a lot on the likelihood of being certified. Is that appropriate at this stage? No, Your Honor. And what would be the cases that would best support disentangling? I think if you look at every case that this court has decided, laying out, if we're still talking about inherently transitory class. This is Salazar. This is Rabideau. There are district court cases as well, including as far back as Gaddis in the Southern District. The mootness inquiry and the class certification inquiry are separate. And importing it into it doesn't make sense. The mootness inquiry is a Rule 12 motion. Allegations are accepted as true. And we proceed as a class because that's alleged in the complaint. The class certification inquiry and whether the class is going to be certified, that's a Rule 23 inquiry that requires an evidentiary basis. That's for later. Now, obviously, there is some interplay with the mootness showing and having to marshal facts for certain of the mootness exceptions, like capable of repetition and evading review, which we think we have in the record here or could show if this was reversed. But it's not a class certification standard. It's certainly not a summary judgment standard. And that seems to be what the state is sort of incorporating into this. Thank you, counsel. You've reserved a couple of minutes for rebuttal.  Ms. Monty? May it please the Court. My name is Jennifer Monty. I represent Disability Rights New York. Congress, by statute, may create representational relationships to permit an entity to enforce the actual injury of another. This is the exact relationship that Congress created with the Protection Advocacy System. I want to make sure, though, and I will confess that your briefs weren't crystal clear on this. You are not arguing that Congress can, by a pen, eliminate the constitutional minimum requirements of standing. That is not your position. That is not our position. Your position is instead that as to the first prong, whether or not the plaintiff has to be the person itself or whether it can be on someone else is something that Congress can determine. And that is, so you're really only talking about Congress intervening as to who has to demonstrate an injury that must be demonstrated. Exactly. Who is the representative who can step in the shoes of the injured party? And the Protection and Advocacy System created that. So it doesn't offend Article III. Article III is demonstrated by, dear, or satisfied by, dear, and why, when it alleges the injuries of the people that Congress directed it to represent, people with intellectual and developmental disabilities who are unnecessarily institutionalized because the state's operation of their programs and services. OK, so your statutes that you are arguing that explain what Congress did look different than the other statutes that do that. It looks different than the EEOC's. It looks different than the Department of Justice. What do you think is the best textual hook you have for suggesting that a P&A organization is on the same footing as the EEOC in employment cases, the DOJ is in voting cases, the DOL is in FMLA cases? What is the best textual hook you have? So the statute's language in the Developmental Disabilities Bill of Rights Act and the Protection Advocacy for Individuals with Mental Illness Act uses the terms bring suit on behalf of individuals. And if you look at the EEOC, it's bring civil actions. If you look at the Fair Labor Standards Act, it's may bring in action, and so on and so forth. The state AG, in each one of them, the Congress made clear that the entity can bring legal action on behalf of the directed party that it is to step into the shoes of. And the statute on its face, we will say, is clear, those words, bring suit on behalf of individuals with disabilities. But you can look for that solid footing in both the reading of the regulation, which supports it, but also as well as the ratification by Congress in 1994, where they reenacted and demonstrated through their committee testimony that there was a request to, let's make the statute clear that this is what you intend, standing to the protection advocacy systems. And the language of the committee was, no statutory fix is necessary. And they cited to two district court cases that adopted the very theory that DRNY is asserting here. Has any court of appeals adopted this theory, this congressionally authorized representative standing theory? No court of appeals has adopted the protection and advocacy through statute, the way the argument here. But it is on solid footing with the Supreme Court precedent on the Congress's authority to assert the standing. And what about Kreinler? I'm sorry, I didn't mean to interrupt. One follow up on what you just said. What would you have us say if we were to adopt your position about TransUnion and Spokio? I'm sorry. About TransUnion and Spokio, where the Supreme Court said that standing can't be something that's just a statutory injury. Well, in both of those cases, the court was not dealing with a congressionally authorized party. It was dealing with analyzing the injury under a statute, not the ability for a representative to stand in the shoes of the injured party. And in none of those cases that are either cited by the district court or by the defendant do we have the example of Congress directing the representational relationship between the parties. So I think what you're saying is that we would basically have to say that TransUnion and Spokio are overruling Kreinler, which specifically say that Congress can set forth who is statutorily capable of litigating these cases, or of having standing in these cases. Yes. That Congress can establish who can step in the shoes. And that's not an Article III question. There still needs to be injury, and that injury is simply demonstrated by pointing to who Congress directed that body to represent. But what is DRNY's injury? DRNY does not need to have an injury, doesn't need to show an injury. Instead, what occurs is- That's the step, though, that is novel, that you're asking us to create new doctrine, I would say. Respectfully, I would say it's not novel. There are many circumstances where Congress has created a representational relationship, and the injury does not happen to the party that Congress directs to represent. The EOC, fair housing organizations, the- Private entities? Fair housing organizations or private entities, yes. So whether, and if we really examine this as a constitutional prohibition, it doesn't matter whether Congress has, I'm sorry, the Supreme Court has recognized it as something a public entity has versus a private entity. It has to be, it's constitutional. Once the Supreme Court recognized, the EOC had that authority. Because there is no differentiation in Article III between a public entity and a private entity. So if the EOC need not demonstrate injury to itself, then DRNY need not demonstrate injury to itself. It simply must step into the shoes. We just have to be convinced that the statutes for the P&Is do the same thing as what the statutes for the EOC do. Sure, but reading, looking at the actual text of the statute, and the fact that Congress reenacted it in 1984, actually saying that that is what we intended to do. This court's precedent says, under the theory of reenactment, that where a statute is not altered by Congress after judicial decisions or after regulatory clarification, that Congress adopted that rationale as is. And I think Congress, in this case, went even further by citing the exact cases that demonstrate the theory that DRNY is asserting here. Congress knew what it was doing, and it did it. Thank you, counsel. You've reserved a minute for rebuttal. Mr. Welton. Thank you, Your Honors. May it please the Court, Cleland Welton for the State Defendants. I'm so sorry. Can you speak a little louder into the mic? Thank you. Cleland Welton for the State Defendants. District Court correctly dismissed a complaint for lack of subject matter jurisdiction for two reasons. First, DRNY does not have Article III standing to sue. And second, the individual plaintiff's claims are all moot. OK, so can you tell me how you would distinguish? I mean, I do not believe the state would take the position that the Department of Justice can't litigate voting cases, or that the EEOC can't litigate employment discrimination cases. What about the statute makes it different? Sure, in those cases, it's the federal government asserting a sovereign interest to enforce federal law. It doesn't need a separate source of Article III standing to vindicate federal interests as reflected in federal law. But they can't say our federal interest is best suited by having a diverse system of entities acting as in places where we can't. You think that they have to create an agency that is designed to do this? I believe that's the holding in Hollingsworth versus Perry,  Hollingsworth says government can't create a, or can't authorize a private party to come into federal court to defend the government's interests if that private party doesn't have its own injury in fact. And that's what we have here. I think she just acknowledged, my friend just acknowledged that there is no injury in fact to DRNY itself. There's no injury in fact alleged to any individual who would be a member of DRNY under this court's holding in disability advocates. And so there's no injury in fact for them to vindicate to get into federal court under Article III. Their theory of congressionally authorized representational standing has not been adopted by any court, any federal court of appeals that I'm aware of. They have cited a couple of cases from prior to disability advocates that they refer to as Congress having adopted when they re-adopted the statute. Those cases were before this court in disability advocates. And the court directly explained that those cases are incorrect because they allied the constitutional requirements of Article III, the requirement to demonstrate injury in fact. Well, right, but that wasn't looking at those, that case was, those cases it seems to me were not thinking about the idea of a representational standing theory. They were instead looking under it under only associational standing and then deciding that it didn't, that there wasn't enough of a showing. And beside their lower court cases anyway, right? Their district court cases? Correct, yes. And then they were incorrectly decided as this court explained in disability advocates that they ignored the requirement to demonstrate injury in fact. What do you make of the Kreinler case? I mean, that's the case that I think does a lot of work for their argument about Congress being able to set a representational relationship as long as the minimums of Article III are met. Kreinler is a ketamine case. And subsequent to Kreinler, the Supreme Court decided for my agency of natural resources, which is on the same point, standing in ketamine actions. And the court explains that in that specific context in ketamine, the federal government through the False Claims Act, through statute of that nature, it assigns part of its own damages claim to the relator. And the relator can rely on the federal government's injury to pursue claims of fraud or whatnot. So you think it turns on damages? No, it turns on, if you look at the Vermont Agency of Natural Resources case, it turns on the theory that the government in that context is specifically assigning its claim to the relator. And the relator can then rely on the federal government's injury to pursue claims of its own. The Supreme Court specifically explained that that sort of theory of third party standing goes back to before the founding and therefore is incorporated in the case of controversy requirement. There's no similar history of this kind of standing that the DRNY is attempting to invoke here. And so they can't rely on Kreinler as establishing that. And even if they could, I don't think that the statutes here are fairly read to assign anyone's claims to DRNY. It doesn't assign the government's authority to DRNY. It doesn't assign any individual person's claims to DRNY. That theory does not work either. So there's no injury in fact that they can rely on here as supporting DRNY's right to come into court. Well, what do you make of the United Food and Commercial Workers Union local, where Souter said the idea of the constitutional minimum isn't who did the injury or who experienced it, but instead that there was one. What do we do about that? Because that's outside the KTAM action.  In United Food, that's a union case. And they're suing on behalf of the members of the union. And so under the representational standing theory, the union can bring claims. Right, but aren't we comply? But I think part of the challenge with the doctrine, and I will completely agree it is super muddy, is that associational and representational standing don't have to mean the same thing. Some of the times the doctrine does is there are two strands of third party standing. And one of them assumes membership, and one of them doesn't. It assumes that you're standing in the shoes of someone else, perhaps like a doctor-patient relationship or something like that. And I didn't read United Farm or I didn't read United Food and Commercial Workers Union to be emphasizing the associational standing part of it, but merely the fact that Congress could create a relationship. Are you disputing that? I read that case to say that the requirement of, and if the court is relying on Warth and other prior cases, the requirement of an injury in fact to a member of the organization is a foundational requirement of Article 3. And the RNYA here is not. I mean, a direct quote is that there be an injury in fact. Then the other stuff is prudential. An injury in fact to a member of the organization. That's not what this says. I mean, it's because it's a union. So it was that, I mean, it's literally Article 3 of the Constitution limits the federal judicial powers to cases or controversies there by entailing as an irreducible minimum that there be an injury in fact. There are other cases that are outside the third party setting that use the word plaintiff that's connected. And I understand the whole ball of wax that we're trying to figure out, the whole point that we're trying to assess is whether or not the Congress can say, does it have to be the plaintiff or can it be someone else standing in the shoe of the plaintiff? And I think you agree that there are some people that can stand in the shoe. And what we're trying to figure out is does this statute say that a P&A organization is? And I think your earlier response that Hollingwood would say no because they're different, right? Is that your argument? Well, I think we have two arguments. One, I don't think the statute puts them in the shoes of the individuals who are not before this court whose names we don't know who we don't know if they have any actual involvement in DRNY. So we don't know who they are. I don't think the statute says that those claims have been given to DRNY. But even if it had under Hollingsworth, I do think that they don't have standing to assert to bring those kinds of claims because DRNY does not have its own injury. You can't come into federal court without an injury to the plaintiff itself or in the case of an organization to one of its members. And they have disclaimed that theory. And so they don't have the ability to bring that kind of claim here. OK, and you say you then maybe the part that I'm missing is then why is the injury that the DOJ faces when they're litigating a voting case? Why is that different than the injury that a P&A organization faces when it is litigating the injury of a person who's disabled? Again, when DOJ or the EEOC or any federal government agency comes into federal court, it's asserting the United States sovereign interests. It had its own right to defend federal interests and injury to prevent injury to those interests. And so that's different from a private party who can't just invoke generalized broad grievances. They have to point to a concrete and particularized injury, in fact, that relates to the plaintiff who is coming to the court. So that's quite different from the federal government bringing its own sovereign claim. Can Congress delegate someone else to assert its interest in that way, right? Because we don't have a nationwide disability and rights organization. Does Congress have the authority to say that we are setting these people as the ones that can assert our federal interests? To a private entity, no. I think the holding of Hollingsworth is no. That's what I thought you would say. So no. But they can authorize the creation of P&A organizations that have all sorts of other functions and can advocate in any number of other ways. They can come into court, as they did here, representing actual individuals. And they can provide them with representation. And they can litigate cases on their behalf. They have their own rights under the statute to obtain information, to conduct investigations. If those rights are impaired, then the P&A system can come into federal court and say, my own interests are being harmed. I have my own injury. They can come into court then, if the organization's interests are harmed. They can participate as a MIECHE in a federal litigation. They can lobby the legislature or the state of the federal government. They can lobby the executive branches. They can do all kinds of things. The one thing they can't do is come into federal court without permission. What do you make of the Fair Housing Act analog? I mean, fair housing organizations do a lot of their own litigating. We have tester standing. I mean, there's a, I mean. Well, I think tester standing is the answer there. You have an individual tester who has, under the doctrine of tester standing, can say, I have an Article III injury to my interest there. And that you can rely on that injury. But that's not the organization. Or maybe it's an injury to that member. And so then the organization can rely on that Article III injury, in fact, of the individual member. But that's different from here, where they are not relying on injuries to any individual member that they've identified. Because they don't have members, as this court defined them, in disability advocates. They've, in fact, entirely disavowed that theory of standing. Could I ask you about mootness in the time you have left? A lot of the briefing addresses the exceptions to mootness. And the answer to some of those questions seem, to me, somewhat dependent on facts and things that aren't quite obvious. And these are things the district court didn't reach at all. So why shouldn't we remand it for the district court to consider some of these, for the parties to raise and the district courts to consider these arguments in the first instance? Well, as Your Honor observed, they had the opportunity to raise these arguments in their responsive letter. And so the leadership. And your friend said he did raise at least the inherently transitory exception. I think that's right. I think he did raise that argument in their letter brief. But what they didn't do is say, we need to develop a record on this issue and that issue and that issue in order to litigate this case. They said, it's inherently transitory. You should deny the motion to dismiss. So they didn't say they needed to develop a record. But even setting that aside, I mean, the ultimate reason that the inherently transitory exception doesn't apply is that, as the district court, I think, observed, there's no possibility of obtaining class certification here. And so there's no basis to invoke an exception that only applies in the case of a certifiable class. But isn't that a question, though? You say there's no basis for class certification here. Has that question been fleshed out? No, because first of all, they haven't ever made the motion for class certification. But setting that aside, even if they had made the motion, it would fail under Rule 23b2. They have not ever asked for, and I can't think of, any kind of relief that could be lawfully granted to the entire class. But since that hasn't been, I take your point that they haven't made the motion, but you're sort of weighing in on the merits on something that hasn't been fleshed out. I know the district court does go into that. But given the way this was ruled on in three pages, and I'm a little, I guess, skeptical, maybe, that you can definitively say, or that we have enough to really say, oh, no, there's no basis for possibly finding that a class certification would have been granted. Well, I think it turns on a pure question of law. Is there relief that could be granted class-wide? And the answer to that is no. They had the opportunity to identify relief they were seeking before the district court on their PI motion. They never identified anything that would be lawfully granted. They could have done that in their letter response in the district court. They didn't put anything there. They had a reply brief in this court after we raised this problem. And they didn't identify any class-wide relief that could be granted. They just never said what it is they are looking for, or shown how, or even tried to argue how it could provide relief to every class. We said in ICC that it has to be obvious. And it's not, I think, obvious to me that the exceptions to mootness don't apply here. You may well be right. But we just, it strikes me that we don't have enough. The arguments weren't fleshed out and were presented with them for the first time on appeal. It just seems like the right thing to do would be to remand and let the district court, let you all address these issues and have the district court address them in proper briefing, as opposed to the pre-motion letters, which are just supposed to be a kind of preview of what is actually argued and briefed. Sure, I mean, that's the most they could get here. I don't think that is necessary, particularly on the inherently transitory exception, because there's no point in sending it back to the district court to decide, once again, for the third time that there's no possible class-wide relief after they've failed to identify anything that could be granted. They can't get, I see my time has expired, my, they can't. You can finish. Thank you. They can't get relief in the form of an order directing us to act with reasonable prominence. That's too vague. That doesn't satisfy Rule 65. They couldn't get something telling, setting a deadline for each class member, because in many cases, it just takes too long and we wouldn't be able to comply with that. It would exceed what we're required to do under federal law. And there's no change to any state policy that could be ordered that would be consistent with federal law and consistent with our obligations. So since there's no relief that could be granted on a class-wide basis, they can't invoke an exception to class certification, excuse me, an exception to mootness that only applies to a certifiable class. If there are no other questions, I'll ask the court to affirm the judgment of dismissal. Thank you, counsel. We'll hear rebuttals from, starting with Mr. Breland. Thank you. I'll start with where the state just left off. The state took the position that the exception to mootness for inherently transitory classes only applies to a certifiable class. No court, and certainly not this court, has ever held that that is the case. The arguments that we are making here were made to the district court to the extent they were able to be made in the procedural posture in which the district court ruled on dismissing this case. But are there, I mean, are there additional, you make those arguments in front of us. Are there additional arguments? I mean, this is, on that point, a question of law. If we send it back, is there something additional or more that you're going to say that you haven't said in your briefs in front of us as to this point? Yes, Your Honor, insofar as we can develop the record as to the capable of repetition mootness exception for the individual claimants. The state has criticized in their opposition brief that we didn't make a record of the individual plaintiffs returning to institutional settings after being placed in community residences. As we offered in our reply, that's not the case. We can't cite to record evidence because this was not developed below. And this is exactly what Your Honor made the point about pre-motion letters. These are not meant to be fully exhaustive. In fact, if you read our letter, we said that the request to move to dismiss should be denied. But that's not how the district court ruled on it. This court's decision in international code made clear that pre-motion letters are not a basis on which to dismiss a plaintiff's action without an opportunity to be heard. We did not have that opportunity. And so the dismissal should be reversed. Finally, I direct this court to the District of New Hampshire's decision in Fitzmorris. We said it in our reply brief. The state takes a lot of issue with our request for relief. But as that court stated, when certifying precisely the class that we're interested in certifying here, just in the state of New Hampshire, that's a question that is for after class certification, not even for the class certification stage. Thank you. Thank you, counsel. Ms. Monfi? Your Honors, unless the court has any questions, I will.  I have two questions. First, I'm puzzled by the fact of your disavowal of associational standing. In particular, I'm puzzled that there's not even an argument that being designated a P&A brings in the associational standing element. So I don't know if that's a question. That's just a comment on? So I'll start with your- But I have a follow-up. I'll start with that, and then you can ask your follow-up. Do you know why it doesn't disavow associational standing? It simply is just not asserting associational standing in this case, because it believes it does not need to do that because of the congressional designation. Well, but it's plaintiff's burden to establish standing. So if you're not making the argument, you're not actively disavowing it, but you're not making the argument. Right, in this case, it doesn't mean that in a future case it couldn't be made, right? So associational standing is a case-by-case analysis, and that brings the point of why, dear, and why it's not asserting it here, because it adds burden, and Congress made clear that the scarce resources of the P&A should not be used on asserting each time associational standing, which is why a district court in Indiana said, why are we doing this? Every time you bring a case, you're asserting associational standing P&A. You don't need to do that because Congress has made the designation. But I'll let you follow up your question. Right, I mean, I think part of, and I take your point in terms of that, but part of what we're concerned about in general with standing is that the right person, the person who's being injured, is bringing the case and is properly pursuing it. And so for associational standing, there's that assurance that, yes, the individuals who are harmed by it are being represented. But I understand what you just said in terms of not raising that. My follow-up question goes to this idea of Congress creating representational interests when it's not the party who they're saying, you can pursue this on behalf of the United States government. You, you know, EEOC, USCC, our government interests, we're gonna give it to this group to pursue. To the extent that you're pursuing interests that are not, you know, an interest, a specific injury to the United States, the idea that you are equivalent to those organizations, that what Congress did in creating these PNAs was equivalent to what it was doing in creating those federal agencies or in allowing key TAM actions, or those things where it's easier to see, oh, this is an interest of the federal government. We've been harmed by fraud, so we're gonna allow these, we're gonna allow people to file these key TAM actions or what have you. You're not asserting the federal government's interests. You're presenting yourself as asserting the interests of these individuals, and that seems different to me. Well, I will say that even in the EEOC case, I will sort of differ from you, Your Honor, in terms of what the protection there was for employees. So it was, you know, even if you, even if I follow your logic that it's the United States wanting to protect employees, to say that Congress can't select another entity to protect citizens, and if you look at the purpose and the finding of the PNA Act, there's great foundation in the idea that there were groups of people injured in the same way that groups of people were injured that the Congress wanted the EEOC or the Department of Justice to protect, and they wanted to add a layer of protection, and they sought to root out abuse, neglect, and rights violations. And I will say that it is not unique that it selected a private, you know, entity in the PNA system. So fair housing, as this court has recognized, there's fair housing organizations that are private entities. Right, it's not so much the private entity, it's the interest that's being protected. Sure, but the interest is that Congress identified abuse, neglect, and rights violations and wanted it to stop. And if it could stop by only allowing individual rights of action, then Congress wouldn't have had to act to create the protection advocacy system. But it did because those abuses, clearly if a person could have entered court to stop abuse, it wouldn't have gotten to Congress. But once it did, Congress said, we want something more. And it didn't turn to the Department of Justice, and it didn't turn to another federal agency, it turned to the creation of this system. And I will say that the question that I think is important is not when an interest is sort of aligned and when they can do it. The question is, if they can do it once, under Article III, if this is just a constitutional question, if Congress can do it with its government interest, then it can do it in its interest to protect other people in any way it sees, because constitutionally, Article III does not differentiate between when the government is asserting interest before the court or when a private citizen is asserting the interest. And then the question becomes, and I will go back to your point about, we've fashioned associational standing to make sure the right party's before the court. That is a judicially self-imposed element to try to have the court decide that the right parties are before. And Congress should have the same authority as the judiciary to impose when they want certain parties to come before the court. And the Supreme Court has made clear that it's not for the judiciary to overrule Congress's intent when they want to do that. And it also, Congress can waive any prudential elements that are established by the judiciary. Well, I mean, and I think there's some force to what you're saying just by looking at the purpose section of the creations of the P&A and the findings section. Is that where you think it explains that it's both to ensure the rights of individuals with mental illness and to protect the rights of that individuals to ensure the enforcement of the Constitution and federal and state statutes? That's the interest. That's what it looks like when the EOC does it, when the DOJ does it, when anybody else does it. Exactly. And when you're looking, if you're comparing it to associational standing, is this the right party? What are the things that the P&As, there's only 57 of them, that 57 P&As in this country can do, one in every state and territory. The enactment, the statute talks about what it can do. So Congress did put guardrails on the protection and advocacy system of what they are intending to do and what rights they're intending to enforce. So it isn't as if the courts are gonna be overrun with different advocacy groups going forward. It's 57 P&As and Congress identified an interest that it wanted to protect. It identified the entities that needed to protect it and it said, go show your injury. So I agree to the people that we've directed you to represent. Thank you, counsel. Thank you all. We'll take the case under advisement.